May it please the Court, the Director is here today to ask this Court to reverse the District Court's decision that the Court of Appeals holding that Mr. Spates correctly, validly waived his right to counsel was constitutionally conducted by the trial court. The District Court in holding to the contrary and finding that the Court of Appeals of Virginia made an unreasonable decision was based first on evidence that Mr. Spates chose not to present to the Court of Appeals of Virginia. The District Court relies heavily, almost exclusively, on conclusions it draws from a transcript from February 12, 2007, which was not part of the record presented to the Court of Appeals of Virginia by Mr. Spates. Mr. Spates was the appellant at that point, was at that point represented by counsel. The counsel he had discharged was reappointed to him at the conclusion of the trial and represented him through trial. They made a strategic decision of what to include in the record to present to the Court of Appeals of Virginia. The only evidence they presented about the waiver issue was the certificate executed in April 2007. Reliance on that certificate and the statements in the certificate signed by the trial judge and by Mr. Spates, they made a reasonable conclusion that he had been advised, exactly as the certificate said, that the advice given waiver. Yes. That the advice was conducted on that date exactly as the judge stated by signature and Mr. Spates agreed by his signature that he was advised of the nature of the charges, the possible punishments of the benefits of counsel, of the choice and consequences of waiving counsel, the other specifics that are set forth in that certificate, that Mr. Spates, that the judge found based on the advice given at that day that he had made a knowing voluntary waiver of his right to counsel. Did this go through, went up to the Virginia Supreme Court? The history of the state courts, did, how many state courts looked at it? The last reasoned opinion was the Court of Appeals of Virginia. There was a request for review by the Supreme Court of Virginia, which was declined. The appeal was refused and there was no reason, it was only an order refusing for the review in the Supreme Court of Virginia. And when it came for a habeas review, it was found that it had been decided on direct appeal. Any state habeas review? There was a state habeas filed, but the state habeas review did not reach the claim. It found under state rule under Henry that the issue sought to be raised had already been decided on direct appeal and was barred from any litigation in state habeas. So the State Court of Appeals ruled on the merits? So the Court of Appeals of Virginia ruled on merits, yes, Your Honor. And that was the decision that was before the district court pursuant to his 2254 petition. And that was the decision that the district court considering circuit law in this whole thing. You read the opinion and they're supposed to be, the statute is perfectly clear that it has to be an unreasonable application of Supreme Court law. And, you know, Wright says it and Marshall says it and our own opinion in Bell v. Jarvis says it, you know, so this is time and time again this is supposed to be an exercise whether it's a violation of the law as found by the Supreme Court. And then I look at the district court opinion and it makes all these references to circuit law as a basis for this decision. What's happening? I don't have an answer to what the district court was thinking, Your Honor. We, of course, made that objection to the magistrate court's, magistrate judge's important recommendations and repeated our objection in Rule 59 motion to the district court to reconsider that it was improper to rely on circuit court precedent. The appellee tries to argue that sometimes circuit court precedent is helpful if it's in a habeas matter but none of those cases. Circuit court precedent is illuminating and everything but that, you know, that's just getting all that stuff into the back door and through the back door and trying to do an end run around the view that it needs to be predicated on Supreme Court decisions. And, Your Honor, it also gets backwards what the Supreme Court has said in Renico and Mersaience and Yarborough that where you have a general rule and the district court correctly noted that Feretta is a general rule, the reasonableness analysis required in reviewing the state court decision gives the state court greater latitude in doing something reasonable with a general rule than if there were a narrow specific rule. It's not that they need circuit court precedent to refine a general rule in the Supreme Court. The general rule of the Supreme Court gives the state court latitude to make a reasonable application. And that's exactly what they did here. It's never been argued or found that the warnings and advice that Mr. Space was given as reflected in the certificate was an insufficient warning pursuant to Feretta and the Supreme Court cases that follow Feretta. The only criticism the district court made was that it's improper reliance on the February 12th transcript wasn't a sufficient colloquy under Feretta. I reread the decision again this morning to try and assure myself I can't find anywhere in the district court decision that addresses the sufficiency of the certificate warnings under Feretta. I don't see where the appellant, has ever argued that the certificate, if it accurately reflects what Judge Shockley did on April 23rd, was an insufficient colloquy pursuant to Feretta. So it would require that we disbelieve that the judge did what she said she did on April 23rd, that he was not in fact advised as she certified to find that there was an invalid waiver pursuant to Feretta. Yes, Mr. Spates first signed the certificate which is written first person that I have been advised of these things and the judge then signed below that confirming. Your point is the judge would not have signed their certificate personally saying I have been advised, I have been advised, unless the defendant had been advised. Yes, Your Honor. We can't assume she's lying. There's nothing to support such an assumption in the record and in fact the Supreme Court precedent is we're going to assume that the courts conduct their business normally and regularly. So it says she did it. I think the analysis probably should stop at that point. The presumption of regularity means at least this, it would be unusual for a judge to have said, to have signed something where it says I have been advised by a judge of this court that I have the following rights, I've been advised by a judge of this court the nature of the charges if that weren't true. Exactly, Your Honor. I think the Court of Appeals of Virginia was certainly reasonable, I think they were also correct, but for purpose of this review I think they were certainly reasonable to rely on the trial judge's certificate that Mr. Spates had been advised as certified before being allowed to waive counsel, waive his right to counsel, excuse me. No, it's interesting because Ferretta doesn't provide any particular catechism. No, Your Honor. Ferretta does not, Tovar does not, none of the subsequent cases provide any particular rule either, which I think perhaps was the temptation for the cases and the benchmark that it follows in trials that it conducts itself, but as the Court pointed out as we've argued in the brief, that's not clearly established federal law as decided by the United States Supreme Court. And where it has a general rule as set forth in Ferretta, it has my notes. Can you tell me how it came about that the magistrate judge ordered this transcript? I cannot, Your Honor. I came to the case after that point. I've reviewed the record of the orders and the pleadings at that point. It appeared to be a sua sponte request by the magistrate judge that the transcript be prepared at that point. We didn't know if there was some procedural issue that he wanted to make sure had been exhausted or that was speculation, of course. We didn't know why he ordered it prepared. Once we got the report and recommendation, we had an inkling why he might have had it prepared. Still not clear why he ordered it prepared. But in any case, because of Mr. States' own choice, it was not before the Court of Appeals of Virginia. They decided to claim on exactly the record Mr. States wanted the Court of Appeals of Virginia to have and decided that we would argue reasonably. If there are no additional questions, Your Honor, I'll reserve the balance of my time for any rebuttal. Mr. Walters. Thank you. Good morning, Your Honor. May it please the Court. I'm glad to be assured the clock's working because I suspect I'll need most of it. I want to start out with a very important point. It's a very important case, and it's a very important case because it's not in the briefs. As Your Honor, you're used to seeing me represent the appellant, I'm the appellee in this case. I will start by saying that I understood the way the opening brief was, the real issue was about could the District Court consider this and not really about whose obligation it was. But the case I want to say is Watkins v. Commonwealth. It's 494 Southeast 2nd, 859. It's a Virginia Court of Appeals case from 1998. Holding that case is critical here because what the Virginia Court of Appeals says is that in Virginia, on appeal, when the issue of the voluntariness of the defendant's waiver of counsel is at issue, the burden is on the Commonwealth to make the relevant transcripts the part of the record. The burden is not on the defendant to do that. That's at page 863. As the Court points out there, that's because the right to counsel is so fundamental that you can't shift the burden to the defendant. That burden remains on the Commonwealth, and it is in fact the Commonwealth's obligation to produce the transcript. So that kind of leads into the question I asked him of how this transcript came to be produced to the Master Judge. Do you know on whose motion that was done, if it was on an attorney's motion or whether or not it was sought by the Master Judge on his own? I don't, Your Honor, because certainly if Mr. Dullahan came late to the case, I came even later, as I was appointed after the appeal had been perfected. I think, though, to a certain extent, that misses the issue because the question is, and if you look at Penholster, Penholster, as the Court itself says, the question on which we – I'm not asking the question because I think it has any particular legal significance. I'm just curious as to how this got into the record and what purpose it was. Well, my answer would be, Your Honor, I think it was a diligent magistrate judge who said this is important evidence. It's evidence that it was the Commonwealth's burden to produce. I'm going to – and my – moving to Penholster was actually to answer the question, which Penholster says – so the question we're reviewing is whether, and this is a quotation from 1398, whether 2254 D1 permits consideration of evidence introduced in an evidentiary hearing before the federal habeas court. It did not purport to address what constitutes the state court record, what is in it or what is not in it. I think what's most interesting is the Supreme Court in Penholster, it's at footnote 12, says, well, now we're going to turn to our own independent review of the state court record, and it notes in footnote 12 the parties agree on what that is. So there was no issue in Penholster at all. I don't understand why the combination of the February 12 hearing plus the written waiver isn't enough to establish the fact that there was a waiver of the right to counsel and that he wanted to proceed pro se. Well, certainly, Your Honor, if you look at the – what we'll call the Ferretti inquiry – But here's the clearly established Supreme Court rule that would require more than was on evidence with the written waiver and the – from the written waiver and the February 12 hearing. Well, Your Honor, I'm going to have to answer that in two parts. If you look at what the February 12 hearing said, and the relevant parts are Joint Appendix 139 and 140, it's very brief. It just says, you're sure about this, Mr. Spates? The defendant, yes, ma'am. You're going to be held to the same standards if you were an attorney. You understand that? Yes. You're going to be required to know when to make an objection, the basis – That's fine, but, you know, it's still something. It's on point, and it's followed up by, you know, you can't divide and conquer. You have to take these two things in tandem. Well, certainly, Your Honor, I think it's critical to take them in tandem because – and you actually have to go forward to May 7th and take all three of them. Sure, you can use tandem when there's three, but in conjunction because you have the actual transcript of the Feretta inquiry at 139 and 140. I think what's important is if you go on then to page 146, the court rules on the motion on February 12th. It says – let me make sure I get the – page 146. Okay, Ms. Joslin, you're relieved of your duties. Mr. Spates, you're on your own. You may represent yourself. It is your right. And then on February 14th, two days later, it's in the joint appendix at a page I will be happy to confirm to the court, but it is the order that Judge Shockley entered, which says on February 12th, I granted the motion. The defendant's representing himself. There was nothing to carry forward to April 23rd. There was no indication of a further inquiry. So I think that gives you the context. Except on April 23rd, if Mr. Spates had declined to sign this certificate, then he would have been appointed counsel. I would disagree with that, Your Honor, because Judge Shockley made it clear on February 12th that she wasn't going to, you know, tolerate this sort of back and forth. No, but you're trying to suggest that the April 23rd certificate was pointless. No, I'm not trying to suggest it was pointless. I'm trying to suggest that there's lasting – Because I've been advised by a judge on the nature of the charges, the potential punishment, that I have the following rights to be – I have a right to be represented by a lawyer. Now, suppose he had said, well, no, I haven't been advised of that at all. I haven't been advised of the nature of the charges. I don't know what it's pending against me. I haven't – I didn't know that all of these things – I don't know what – that in proceeding without a lawyer, I may be confronted with complicated legal issues. What are you talking about? If he had objected in any way and said, I haven't been advised of all these stuff, I'm proceeding in the dark. You don't think the judge would have appointed counsel and say, look, you know, I'm not going forward with this unless you're fully aware of this and sign this written waiver. Well, I would point out that all those things are exactly what Mr. Spate said on May 7th, which is why I think you have to read all those things in conjunction, because Judge Patrick raised the question and said, I'm sure Judge Shockley went over all that with you. His answer, no. The court, she didn't. All right. No, sir. I didn't – This is what happens in these cases, is that these people are – they're sophisticated and they jerk judges around. And the judge is darned if you deprive them of their pro se rights and you're darned if you deprive them of counsel. And it's just typical. Somebody shows up on the day of trial and pulls the rug out and has a completely contradictory position from what's done. And it seems to me that almost, you know, is trying to sow error into the SOW, trying to sow error into the record by blowing hot and cold. And then, you know, you show up at the last minute. All the witnesses are ready and everything, and you ask for a continuance. And that's just playing games with the court. It's just jerking the court around. I couldn't agree more, John, except that didn't happen here. First off, Judge Shockley said, you're not going to get a continuance. I'll let you go back to your cell and get your notes, but we're going to trial. I think, again, you have to put it – if the court reads – Right. The witnesses were called and the witnesses were ready. That's correct. And that's why the court said, I'm not going to give you a continuance. And so it's in the discretion of the court after all that's preceded. If there's one call that a state court judge can make, a state court trial judge, if there's one call they can make, it's whether to grant a continuance or whether not to grant a continuance. And, you know, it would have frosted me if somebody had shown up on the day of trial and just said, well, look, everything I said before is irrelevant. I want a continuance. Very last minute. Well, Your Honor, again, I don't think the record supports that that that was what was done here on February 12th, which is when it was originally set for trial. Judge Shockley said, I'm not going to give you a continuance. I'm not going to let you yank the court's chain. You have to make a decision. The Supreme Court has said there's an inquiry you need to go through. And the Supreme Court has also made clear that, look, when we talk about a clearly established rule from the Supreme Court, it doesn't mean that there has to be a catechism or a set of steps you have to go through. The Smith and the Schaefer cases, which you cited, indicate that certainly the courts understand and the Supreme Court has indicated we have a clear rule. You know, how can this be an unreason? Given Feretta's generality, how can this be an unreason? You know, and given that written waiver and given that February 12th colloquy, how can this be an unreasonable application of clearly established law? Well, I would suggest, John, it's pretty simple. The Patterson v. Illinois, which follows up on Feretta, basically when you have these Feretta situations, you're dealing with a spectrum. At one end, the sort of the Feretta light is photographic lineups. As the Court says, at the most extreme end is the criminal trial itself, where we are supposed to have the most probing inquiry possible. What the Court has said is at the other extreme, recognizing the enormous importance in the role that an attorney plays in a criminal trial, we have imposed the most rigorous restrictions on the information that must be conveyed to a defendant and the procedures that must be observed. What the Supreme Court has looked to is have they been advised of the charges, have the Court inquired into their educational background, their ability to comprehend their prior experience with the Court. He had a lawyer. He shows up on February 12th and says, I want to discharge this person. I want to discharge him. Which is his constitutional right. That's right, but that's not an involuntary act. And then the Court says, do you know what you're doing? Correct. And the Supreme Court has said, albeit generally, but sufficiently clear that the Federal Courts of Appeals and the Supreme Court has understood when it is violated. When the defendant asserts that right, which right he has, you have to go through a probing and rigorous inquiry to determine whether he is knowingly involuntary exercising it. So, right. And one of the things the Court has to consider is... And that inquiry is memorialized in the April 23rd certificate, which the judge signed. The inquiry is... Excuse me, the judge signed the thing. The judge signs the certificate saying what she advised. And I've been further advised. And you're requiring us almost to say that the judge is lying. Your Honor, what I'm asking the Court to do is to... What kind of respect does that show for the State Court? I'm asking the Court to consider the record as a whole, which is there's a transcript of exactly what Judge Shockley said on February 12th. And I think if you compare what was said to what the courts have found lacking in Smith and Schaeffer, that establishes the inadequacy of the FREDA inquiry on February 12th. You then have a form, which is signed by... I don't dispute it's signed, but it's signed almost two months after the Court had already ruled on the request, discharged counsel, and told Mr. Spates he was on his own. Is there something wrong with that? No, Your Honor. I think what it is, though, is contextually that indicates the Court has already conducted the FREDA inquiry. It says, okay, I've decided this, and it pointedly tells the circuit, it says I'm not going to take up on April 23rd anything that I've already decided, Mr. Spates. That's speculation because the list of what has been advised in that April 23rd written waiver is actually more extensive than the February 12th waiver. And you're trying to say there was no colloquy on April 27th or April 23rd or whatever it was. And I think, you know, that's pure supposition. I'm not trying to say there was none, Your Honor. I mean, I think to turn the Commonwealth's argument on itself... How do you explain the fact that the April written waiver is much more extensive than the February colloquy? How do you fit the February colloquy into the... How do you think that that just incorporates the February colloquy by reference and does nothing else? In fact, is there a reference to the February colloquy and saying at any point in time, well, you know, the February colloquy took care of this or you were advised in February or whatever? No, it doesn't refer back. And I think that's part of the problem. That form is a pre-printed statutorily required form. It doesn't vary in every single case in Virginia where the defendant waives counsel. That's the form that people sign. I'm not calling anybody a liar. It's that, you know, one of the things... Let's put it this way. You're saying that the state court judge misrepresented the facts and, you know, that she signed something that she knew had not been done. And, you know, what... How do we do that? Well, Your Honor, I will tell you as a practitioner before state courts a lot, there's a lot of forms that come before judges that judges sign. I'm not saying anybody's lying or doing anything. I think one of the questions, obviously, at this point is was that... We read all sorts of things that come before us. I think if the court's recollection is... I tell you what I sign, I read. I think what the court... I was... Let me start by saying the question is was the state Virginia Court of Appeals determination reasonable? Was it reasonable when it acted without a full record? Was it reasonable when it acted without a full record that it was the obligation of the Commonwealth to produce? Had all of that information been before the Virginia Court of Appeals, the February 12th transcript? It has to violate clearly established law as established by the Supreme Court. That's correct. Right, and we have the district judge and the magistrate judge here citing what I think are direct appeals and not collateral review orders and citing all kinds of circuit law. Now, you know, I look for your response on that and you say, well, the circuit law is illuminating. Well, in that case, it's always going to be illuminating and we simply undercut the statute which sought to cabin this and restrict it to the law as enunciated by the Supreme Court. Your Honor, I think that's mischaracterizing my argument because I can... What the cases say is we look to Supreme Court precedent to determine what the rule is. Whether that rule has been violated then is a case-by-case determination. As the Supreme Court itself has said, you know, we don't decide everything. We establish these rules. The question then becomes whether they have been violated. So we don't... I don't think the district court disputes that only Supreme Court precedent establishes rules. That's Feretta. We cited numerous cases in our brief that said Feretta and that have held that Feretta is clearly established federal law and when your colloquy is inadequate, it is a violation of that clearly established federal law. Two of them, Smith and Schaefer, are the ones we focus on the most. We cited several others. I'm not arguing... I don't think the district court looked to circuit court precedent to establish the rule. It looks only to Feretta. Then I think, as we said, this court has done... In determining whether those clear rules have been violated, this court consults its own precedent. It looks at... Well, no, because the whole point of that language in the statute was that when you have a rule as general as Feretta, that a basic respect for the states, the generality of the rule gives the state courts a certain latitude and flexibility in its application. That I don't disagree with at all, Your Honor. Clearly, the state court has more latitude there, but it is not this door that's shut to say, well, when it's not a clear rule, it can never be violated. I mean, when there's... Not the catechism, I think was the word the court used. The Supreme Court knows how to establish a catechism. Miranda v. Arizona establishes a catechism. Feretta does nothing of the sort. No, the court explicitly declined to do that, but that doesn't make it not a clear rule. Well, and maybe the reason it declined is because of the fact that judges get jerked back and forth every day. No, the reason it declined, Your Honor, was it said because there was an intensely fact-specific decision that was going to vary from case to case. So you have a clear... And again, I don't mean to dwell on Schaeffer and Smith other than they're... Schaeffer is 10 years old. It's been unremarkable for at least a decade that Feretta establishes a clear rule and that the federal courts of appeals can determine when that rule has been violated. That inadequate inquiries violate that rule. And that the February... If you look at what was found to be inadequate in Smith and Schaeffer and then compare it to what happened on February 12th, that's sort of the beginning and ending of our argument there, Your Honors, is the February 12th inquiry was inadequate. You have a statutory-required pre-printed form that... Again, I'm not saying anybody had any bad intent. I think it was simply, yep, I've already done the Fred inquiry. Let's all sign the form. And then if you look at... It's the Seventh Circuit's decision in Smith. It's one of the things there, that when the trial date rolls around, it becomes quite clear that the defendant didn't understand what was going on. And that's the essence of the Feretta inquiry, is the defendant voluntarily and knowingly, does he understand what is going on? So you have a situation here, Your Honors, where to the extent the record is inadequate, it was a record under Watkins. It was the obligation of the Commonwealth to make adequate. The federal district court got the record. It should have had. The Virginia Court of Appeals had. And we submit, Your Honor, that when you look at the entire record and compare it to the clear rule that Feretta establishes and that other courts of appeals have found to be violated in situations where the inquiry was more adequate, that the district court's decision in this case should be affirmed. Thank you, Mr. Walters. Mr. Delegan, anything in reply? No. Please, Court, first I need to register objection to my counsel citing cases that don't appear anywhere in his briefs, other pleadings were not provided prior to the hearing this morning or otherwise disclosed to me. So I did not bring a copy of Watkins, and I can't comment specifically on its holdings. I do note a couple things, nevertheless. It's a question of state law about whether there was part of the court of appeals record. That doesn't inform what the district court did. The cases we did cite in our reply brief about the burden on the appellant to provide a record post-date, the date he reports Watkins, was decided. I am familiar with a court of appeals case, I don't know if it's Watkins or not, in which the court of appeals on motion supplemented the record by writ of certiorari of the trial court to get a transcript back in front of it when it was requested and it thought it appropriate to do it. But I think the bottom line, if you will, for our purposes today is that the February transcript was not, in fact, part of the record considered by the court whose decision is being reviewed for reasonableness. And further, as I noted before, the February 12th transcript is not the pertinent one if you wanted to supplement the record. What happened, and has been noted, the more detailed advice of the defendant's rights and consequences for waiving counsel occurred in April. This is supported, in fact, specifically in the record, in the May 7th discussions prior to trial. At page 43 of the joint appendix, Ms. Jocelyn comments that she has been fired and reconfirmed that she was fired. That has to refer to two separate proceedings in February where she had a motion to withdraw because Fates didn't wish to have her services anymore and some later date where it was reconfirmed. I don't want to get too far in the weeds in the state court record, and I've done a little ways that way looking at what the court had ordered after February 12th. I note that at JA 22 and 23, the orders it entered granted the motion to withdraw. I don't see anywhere in the orders where it said, and the defendant has waived right to counsel. It simply granted the motion that was before it in February that formally was made by Ms. Jocelyn but at Mr. Fates' request that she be allowed to withdraw as his counsel. So the April hearing was, you know, appropriate time to take up the question of whether he was waiving proceeding with counsel. It's been commented that was two months later what it was also was the next scheduled hearing in these proceedings was the next opportunity to address that when everyone was back in front of the court and present. Counsel has also made reference to Patterson and what he describes as a continuum or spectrum I think is the word Patterson uses for questioning and quotes the passage about a rigorous restriction for waiver at trial. But Patterson itself, again, does not set forth any, in Judge Wilkinson's terms, catechism after saying it requires rigorous examination information. It simply says C. Ferretta. That's at page 298 of the Patterson decision 47 U.S. 285. It's still a general rule even after Patterson and subsequent cases that the Virginia Court of Appeals was required to comply with. They did comply with it. They complied as we've suggested with what Ferretta had even by the February 12th hearing. Certainly by the time the examination of the certificate on April 23rd was completed they've complied with any reasonable interpretation of what Ferretta requires. The Court of Appeals decision finding that the trial court had validly received Mr. State's waiver was correct. It was certainly reasonable. And the District Court's decision that it was unreasonable is erroneous both because it was a transcript not before the Court of Appeals, because it relies on circuit precedent which does not establish clearly established federal law for purposes of 2054 and because the trial court in the Court of Appeals in fact had a record that showed he had been fully informed and made a proper waiver under Ferretta. If there are no other questions I'd ask the Court to overrule the District Court's decision and deny relief. All right. Thank you, Mr. Delegate. Mr. Walters, we appreciate very much your undertaking yet another representation of a client who's been prosaic and we appreciate your help in this. I will come down and greet counsel and then take a short recess of about 5-10 minutes.
judges: William B. Traxler Jr., J. Harvie Wilkinson III, Henry F. Floyd